# LEVI HUEBNER & ASSOCIATES, PC

ATTORNEYS AND COUNSELORS AT LAW
464 MALBONE STREET, SUITE 100
BROOKLYN, NY 11225
TEL: (212) 354-5555
FAX: (718) 636-4444
EMAIL: NEWYORKLAWYER@MSN.COM


October 21, 2026

Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Seidenfeld et al. v. Munoz,* 26-cv-05717 (RPK) (LKE)

Honorable Judge Kovner:

The undersigned is counsel for the Plaintiffs who respectfully respond to the Defendant's request for a pre-motion conference [ECF 7].

This lawsuit presents four questions, none of them require any inquiry into New York's Domestic Relations Law, to determine matters of support, to weigh in on the validity of a divorce decree or to in any other way to address or determine any matter concerning matrimonial law (or to modify an order affecting one of those matters). Those questions are (1) can New York State enjoin the performance of a religious action; (2) can it mandate that particular clergy perform that religious action; (3) can a religious act, performed by "accepted" clergy, be set as a purge condition; and (4) is the practice of confirming arbitration awards containing religious injunctions violative of the establishment clause. Defendant attempts to mischaracterize the purpose of the suit, and to redraft the facts present therein. Plaintiffs seek to alter no court order and have no interest in damages, injunctions, or Judge Munoz in her individual capacity. They bring a challenge to two statutes as applied, and neither touch on New York's DRL, or its policies in favor or against secular marriage, support, or unions: Plaintiffs are perfectly happy to have New York effect any policy or state interest it may have in the realm of secular and legal domestic relations. Plaintiffs' solely challenge the establishment of certain rabbis as being qualified to perform *religious* actions and the injunction of *religious* acts by state actors and the harm it does them.

If New York were to, through the Department of Health or Agriculture, state that only the modern Israeli-Rabbinate recognized rabbis able to certify food kosher, Plaintiffs would sue an official at the Department of Health or Agriculture, or a prosecutor who might enforce the law and would win—New York has done so, it has litigated, it has lost. *Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415 (2d Cir. 2002). Here, the State, acting through judges, rather than any executive actor, has done the

same thing: it has stated that certain rabbis can undertake religious acts and others may not do so, but for the fact that solely judges enforce and apply the instant law, Plaintiffs would never have sued a judge.[1]

Substantive Response to Arguments

**I. *Neither Judicial nor Sovereign Immunity Apply.***

Plaintiffs sue Judge Munoz in her official capacity; in other words, it is a suit against the State. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("suits against state officials in their official capacity therefore should be treated as suits against the State"); *see also Tomlins v. Village of Wappinger Falls Zoning Bd. of Appeals*, No. 08–cv–9813, 812 F.Supp.2d 357, 366, 2011 WL 2714213, at *5 (S.D.N.Y. July 8, 2011) (noting that the "Second Circuit has recently observed that "no court case that we have found extends judicial immunity to an institution (as opposed to an individual)") (citing *Gross v. Rell*, 585 F.3d 72, 93 (2d Cir.2009)).

> The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions

*Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Judge Munoz, sued in her official capacity cannot assert judicial immunity or any personal immunity. *Id.*

Likewise, Eleventh Amendment immunity provides no bar. *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (holding Eleventh Amendment does not bar prospective equitable relief) (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir.2007) (internal quotation marks omitted)).

**II. *Rooker Feldman Does Not Apply.***

In the plainest of language, Rooker-Feldman applies to "state-court losers" and does not apply to nonparties who did not participate in state court proceedings. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 287(2005) ("the doctrine has *no application* to a federal suit brought by *a nonparty* to the state suit) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994))

> Rooker–Feldman is not simply preclusion by another name. The doctrine applies only in "limited circumstances," where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.

---

[1] Somewhat curiously, the instant statutory-enforcement regime places any plaintiff in the unfortunate position of one seeking to challenge statutes specifically designed to frustrate standing. *See, e.g.*, Ernest A. Young, *Uncertain Enforcement and Standing to Su*e, 106 B.U. L. Rev. 915 (2026) (explicating the difficulty of bringing suit in a case where a private party "initiates" the action rather than a traditional state-enforcer). Here, the attorney general does not "enforce" arbitration awards, nor move to confirm them, nor does any executive actor, nor is it a clerk or any particular arbitrator. In the same way, contempt and any purge condition, is set and enforced solely by judicial actors—if Plaintiffs could have sued the governor or the attorney general, they would have, but neither enforces these particular laws. *See Gazzola v. Hochul*, 645 F. Supp. 3d 37, 58 (N.D.N.Y. 2022)*, aff'd, 88 F.4th 186 (2d Cir. 2023)*, (explaining at length that a general duty to execute or defend laws does not form connection sufficient for governor or attorney general to be "enforcer" of law and convey standing).

> The Rooker–Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment. . .

*Lance v. Dennis*, 546 U.S. 459, 466 (2006) (citation omitted).

**III.** ***The Case Has Nothing Whatsoever to Do with Matrimonial Issues.***

Abstention is the exception rather than the norm, *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022), and federal courts have "no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).

This case does not touch on "domestic relations." Here two statutes' are challenged, New York's statute for contempt and New York's statute for confirmation of arbitration awards, neither has anything to do with support, custody, divorce, or anything particular to the nature of "domestic relations"—this suit is not a domestic relations dispute and does not involve issuing or altering divorce, alimony, or custody decrees." *Mochary*, 42 F.4th at 84.

**IV.** ***The State Ignores Establishment Clause Standing Precedent.***

In brief, a party may raise an establishment clause challenge so long as there is a "direct and personal stake" this often occurs because one is connected in some manner or another to the community which is affected by the State "establishment" of religion. *See generally Cooper v. U.S. Postal Serv*., 577 F.3d 479, 490-91 (2d Cir. 2009) (explaining development of "direct exposure" standing and citing *inter alia Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2d Cir.1992). *Cooper* involved a gentleman who traveled to a post office further from his home to avoid exposure to a religious display, this was a personal stake more than sufficient to confer direct exposure standing. Here, Plaintiffs, are clergy and their organizations that have lost "business" because they are not recognized by the State's judges, and thus New York State. Judge Munoz explicitly stated that she would only consider a religious act valid if performed by certain clergy—not the Plaintiffs. It is hard to think of a more direct injury to a clergyman. If New York were to state that only rabbis of ABC sect—the state-recognized religious sect of "real Jewish Rabbis"—could perform bar mitzvah's certainly the non-recognized rabbis would have standing to challenge such an act.[2]

<u>Conclusion</u>

The State either fails to understand the challenge or purposefully misrepresents the nature of the suit, for this reason alone any motion to dismiss would fail—it fares little better on the law.

Respectfully,

/ s/ Levi Huebner

____________________

Levi Huebner

To: All counsel of record via ECF.

---

[2] This is made not better in that Judge Munoz adopted a religious-state's list of approved rabbis—this is the equivalent of accepting Saudi Arabia's list of imams; in such a case virtually all *Shia* imams would be disapproved.